IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| AUDIE GRUNWALD, | ) | Civil No. 10-183-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Rory Linerud
P.O. Box 1105
Salem, OR 97308-1105

Attorney for Plaintiff

Dwight C. Holton
U.S. Attorney
Adrian L. Brown
Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

David J. Burdett
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

   Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Audie Grunwald brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income (SSI) benefits. Plaintiff seeks an Order reversing the decision of the Commissioner and remanding this action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, plaintiff seeks an Order remanding the action to the Agency for further proceedings.

For the reasons set out below, the Commissioner's decision should be affirmed.

**Procedural Background**

On November 14, 2003, plaintiff filed applications for SSI and Disability Insurance Benefits (DIB), alleging that he had been disabled since October 24, 2001. After the applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge (ALJ). A hearing was held before ALJ Jean Kingrey on February 7, 2006. On May 23, 2006, ALJ Kingrey issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act (the Act). Plaintiff did not seek judicial review of that decision.

On July 6, 2007, plaintiff filed an application for SSI benefits. After the application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an ALJ.

A hearing was held before ALJ Philip McLeod on August 13, 2009. In a decision filed on September 25, 2009, ALJ McLeod found that plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on January 27, 2010, when the Appeals Council denied plaintiff's request for review. In the present action, plaintiff seeks judicial review of the Commissioner's decision.

## Factual Background

Plaintiff was born on November 7, 1961, and was 47 years old at the time of his most recent hearing before an ALJ. He has a high school education, and past relevant work experience as a service station attendant and as a nurse's aide.

Plaintiff alleges that he has been disabled since January, 2003, because of a combination of impairments including back pain; bilateral knee pain and swelling; asthma; and difficulty picking up or grasping objects with his dominant right hand. He has been diagnosed with a bilateral inguinal hernia; asthma; syncope; multiple wedge decompression T/S; borderline intellectual functioning; and a pain disorder. Plaintiff has a history of alcohol abuse.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a

FINDINGS AND RECOMMENDATION - 3

summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

<u>Step One</u>. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

<u>Step Two</u>. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

<u>Step Three</u>. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

<u>Step Four</u>. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

<u>Step Five</u>. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner

finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### Hearing Testimony

At the hearing, plaintiff testified that he had back pain, which required him to lay down frequently, and which was significant even when he was sitting. Plaintiff testified that he could not stand for more than 15 minutes at a time because of bilateral knee pain and swelling, that his asthma caused him to pass out frequently and caused residual problems thinking; and that he had difficulty picking up and grasping objects with his dominant right hand.

The ALJ posed a hypothetical to the Vocational Expert (VE), Kent Grant, describing an individual with plaintiff's age, education, past work experience, and the residual functional capacity (RFC) to perform sedentary light and medium work; grasp, handle, and hold; who could use fingers for precise work such as keyboarding but not for fine manipulation such as threading a needle; but who needed to avoid continuous exposure to dust, fumes, and gases.

FINDINGS AND RECOMMENDATION - 5

The VE testified that such an individual could perform plaintiff's past work as a nurse's aide, and could perform other work "available at the regional or national economy" including work as a produce sorter, electronics worker, and packing line worker.

### **ALJ's Decision**

At the first step of his disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 6, 2007, the date of his application for SSI that is at issue in this action.

At the second step, the ALJ found that plaintiff's severe impairments included asthma, back pain, and a crooked finger.

At the third step, the ALJ found that these impairments, alone or in combination, did not meet or equal an impairment in the "listings," 20 C.F.R. §§416.920(a)(4)(iii), 416.920(d).

The ALJ next determined that plaintiff had the residual functional capacity needed to perform medium exertional level work activity, except that he needed to avoid concentrated exposure to dust, fumes, and/or gases, and could not perform fine manipulation such as keyboarding or needle threading. He found that plaintiff could use his hands for grasping, turning, and holding.

At the fourth step of his disability analysis, the ALJ found that plaintiff could perform his past relevant work as a nurse's assistant.

Though he had found that plaintiff could perform one of his past relevant jobs, the ALJ went on, at step five, to consider whether plaintiff could also perform other jobs that existed in substantial numbers in the national economy. Based upon the testimony of the VE, he concluded that plaintiff could work as an agricultural produce sorter, an electronics

FINDINGS AND RECOMMENDATION - 6

worker, or a packing line worker.  Based upon his conclusions at steps four and five, the ALJ concluded that plaintiff was not disabled within the meaning of the Act.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff contends that the ALJ erred in concluding that he could perform his past work as a nurse's assistant, and in concluding that he could perform other work that exists in significant numbers in the national economy. He argues that the ALJ erred in failing to pose a "complete and proper hypothetical," and consequently received and relied on erroneous information from the VE. Plaintiff also contends that the ALJ erred in determining his RFC, and failed to develop the record.

1. **ALJ's hypothetical and conclusion that plaintiff could perform past and other work**

In order to be accurate, an ALJ's hypothetical to a VE must set out all of the claimant's impairments and limitations. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (citing Baugus v. Secretary of Health and Human Services, 717 F.2d 443, 447 (8th Cir. 1983)). The ALJ's depiction of the claimant's limitations must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). If the assumptions in the hypothetical are not supported by the record, a VE's opinion that a claimant can work does not have evidentiary value. Gallant, 753 F.3d at 1456.

Plaintiff correctly notes that, though the ALJ ultimately concluded that plaintiff could not perform fine manipulation such as "keyboarding and needle threading," the hypothetical he posed to the VE described an individual who could "use his fingers for precise work such as keyboarding . . . but not for fine manipulation such as threading a needle." Plaintiff contends that, because the ALJ's limitation of finger use in the hypothetical posed to the VE was less restrictive than that set out in his ultimate decision, the VE's testimony that the described individual could perform plaintiff's past work as a nurse's assistant and other work lacked evidentiary value. He argues that he cannot perform any of the jobs in question

FINDINGS AND RECOMMENDATION - 8

because they require a fine manipulation capability that is beyond that set out in the hypothetical posed to the VE.

I agree that the ALJ erred in posing a hypothetical that was less restrictive than that he ultimately set out in his decision. However, I also agree with the Commissioner's assertion that the ALJ's error was harmless, because the produce sorter position identified by the VE does not require greater fingering ability than is described in the RFC set out in the ALJ's decision. The Commissioner correctly notes that the relevant description of the agricultural produce sorter position, DOT 529.687-176, does not require fine finger manipulation. Instead, it states: "Fingering: Not Present - Activity or condition does not exist." <u>Dictionary of Occupational Titles</u>, 529.687-176, 1991 WL 674781. This position therefore was within plaintiff's hand abilities as described in both the hypothetical posed to the VE and in the RFC set out in the ALJ's decision, and the ALJ's error was harmless. <u>See</u>, <u>e.g.</u>, <u>Stout v. Commissioner</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or irrelevant mistakes harmless).

2. **ALJ's RFC assessment and development of the record**

Plaintiff contends that the ALJ erred in asserting that he did not allege a psychological impairment, and in failing "to appreciate the fact that plaintiff was already found to have a severe impairment of borderline intellectual functioning, which affects his mental abilities." He correctly notes that the ALJ who considered his first applications had concluded that his severe impairments included borderline intellectual functioning, and had limited him to simple routine tasks. Plaintiff contends that the ALJ whose decision is under review here ignored his borderline intellectual functioning and "failed to consider the combined effects of Plaintiff's mental limitations with physical impairments." He argues that this error was not

FINDINGS AND RECOMMENDATION - 9

harmless because his past work as a nurse's aid was "semi skilled" according to the DOT, and the VE's testimony that the other jobs cited at step 5 were "unskilled" did not establish that these positions satisfied the limitation to "routine" work.

Plaintiff's contention that the earlier ALJ's finding of borderline intellectual functioning is "res judicata" is well taken. See Chavez v. Bowen, 844 F.2d 691, 694 (9th Cir. 1988) (in absence of "new" information, findings of earlier ALJ concerning claimant's RFC "entitled to some res judicata consideration in subsequent proceedings"). However, the ALJ's failure to include that impairment in the decision at issue here did not constitute error requiring reversal or remand. As the Commissioner notes, the ALJ who found that plaintiff had borderline intelligence also found that plaintiff could perform his past relevant work as a gas station attendant, a semi-skilled position. The Commissioner also correctly notes that the agricultural produce sorter position requires only Level 1 reasoning, which is the lowest level of reasoning, and requires only that a worker be able to apply "commonsense understanding to carry out simple one or two step instructions . . . ." DOT, 529.687-176, 1991 WL 674781. A limitation to borderline intellectual functioning would not prevent plaintiff from performing this work. The ALJ's conclusion that plaintiff retained the functional capacity required to work as an agricultural produce sorter is supported by substantial evidence, and no further development of the record was required.

## **Conclusion**

A judgment should be entered affirming the Commissioner's decision and dismissing this action with prejudice.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due January 18, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 30th day of December, 2010.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge